Toomey, J.
This matter is before the court on the motion of plaintiff insurance agents, Michael D. Hughes (“Hughes”),[3] Douglas L. Wright (“Wright”),[4] and Gail A. Buffington (“Buffington”)[5] (collectively, “plaintiffs”), for class certification in their action against defendants, Provident Companies (“Provident”), The Paul Revere Corporation (“Paul Revere”) and others (collectively, “defendants”). Plaintiffs contend that defendants violated contractual agreements with several hundred employee insurance agents when they 1) decreased agent commissions on preexisting insurance policies in 1995 and 2) terminated all agents as full-time employees in June 1997. For the following reasons, the motion will be DENIED.
BACKGROUND
Prior to June 30, 1997, plaintiffs were employed by the Paul Revere Corporation as full-time insurance agents (“Agents”). Agents received such benefits as medical insurance, life insurance and retirement plan contributions. They were also provided with clerical and office expense support in agencies throughout the United States. Agents were paid commissions and other fees, including percentage commissions for the policies they sold and additional percentage commissions when policyholders exercised riders to increase the coverage amount of their policies (“rider commissions”). Agents received percentage commissions both for the first year of the policy/rider and for subsequent years during which the policy/rider remained in effect.
Prior to 1995, agents received first-year rider commissions of 50% of the collected premium on health and life insurance policies. In 1995, Provident reduced the amount of such rider commissions to 15% and similarly reduced agents’ rider commissions on disability and physician insurance policies. Plaintiffs allege that those reductions by defendants constituted violations of their Career Sales Representative Agreements (“Agent Agreements”) with Paul Revere, which provided that there would be no commission reductions on “in-force” policies.
On or about April 29, 1996, Provident Companies, Inc. agreed to acquire Paul Revere for a purchase price of approximately one billion dollars ($1,000,000,000). In February and March 1997 defendants Paul Revere and Provident notified all agents that their employment as agents was being terminated as of June 30, 1997 and that they would thereafter be re-employed by Provident as independent contractors. As a result of that change in their employment status, agents no longer received employee benefits or office and other expense support. Each agent was further informed that, unless he or she accepted employment as an independent contractor and satisfied certain Provident production requirements, the agent would forfeit any non-vested renewal commissions on policies that were already in force.
Plaintiffs argue that their termination constituted an additional violation of their Agent Agreements. The Agent Agreement provided that it “may be terminated at will by either party giving the other party thirty days’ written notice.” Plaintiffs contend, however, that Paul Revere had subsequently modified the Agent Agreements, both orally and by conduct, to the end that agents were guaranteed life-long employment. Specifically, plaintiffs assert that Paul Revere managers made repeated and legally binding promises that Paul Revere would retain all career agents through retirement as long as the agents continued to meet agent qualification requirements.
Plaintiffs now seek nationwide certification of a class comprised of all agents affected by defendants’ 1995 commission reductions and 1997 re-employment directive. Defendants oppose the motion, arguing that the plaintiffs have failed to satisfy the commonality and predominance prerequisites to class certification and that the absence of an opt-out provision in Massachusetts law makes the certification of a nationwide class unconstitutional.
DISCUSSION
Before addressing the requirements of Rule 23, this court must determine whether the proposed class action provides adequate constitutional due process protection to those potential class members who do not reside in Massachusetts.
Unlike its federal counterpart, Mass.R.Civ.P. 23(b) does not offer prospective class members the opportunity to opt out of a proposed class action. Consequently, where a Massachusetts class action primarily seeks money judgments, the absence of an opt-out provision may deny minimal due process to class members situated outside Massachusetts. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811, 812 (1985) (where state wishes to bind an absent plaintiff in an action for money damages, but does not have minimum contacts with that plaintiff, the state must provide the plaintiff with minimal due process protections, including notice, an opportunity to be heard, and the opportunity to remove himself or herself from the class).
1. Reduced Commissions
In a case companion to that at bar,[6] several thousand Paul Revere insurance brokers sought nationwide certification as a class, alleging that Paul Revere’s 1991 and 1995 unilateral reduction in their commissions on disability insurance riders violated their Broker Agreements. The brokers asserted that the Broker Agreements prevented Paul Revere from reducing their rider commissions on existing disability policies. In that action, this court held that the plaintiff brokers, who lived outside Massachusetts, were entitled to nationwide class certification because plaintiffs’ *366 claims were primarily for declaratory or equitable relief rather than money damages.
In Eldridge, the parties disputed whether the language of a standard form contract prevented Paul Revere from reducing the percentage of the brokers’ rider commissions on existing policies. The brokers argued that their commissions were protected under the Broker Agreements; Paul Revere responded that rider commissions were not protected by the Broker Agreements because rider commissions had not been included in any commission schedule prior to 1995 and because rider commissions did not qualify as “in-force” policies. The Eldridge court held that construction of the contract language would resolve the dispute by determining whether the Broker Agreements permitted Paul Revere to reduce rider commissions on existing policies. Once the contract dispute was resolved, each broker would automatically be entitled to the same percentage commission. See Allison v. Citgo Petroleum Corp., 151 F.3d 401, 415 (5th Cir. 1998) (in an action for equitable relief, monetary relief does not predominate where the monetary relief is that “to which class members automatically would be entitled once liability to the class ... as a whole is established”).
To the extent that the instant action is for commission reductions based solely on disputed interpretations of the Agent Agreements with Paul Revere, Eldridge would, at first blush, suggest that the plaintiffs at bar might be entitled to equitable relief and, consequently, to certification as a nationwide class upon their showing satisfaction of the other requirements for class certification, to wit, the preconditions mandated by Mass.R.Civ.P. 23(a) and (b).
2. Wrongful Termination
The instant case is, however, distinguishable from the Eldridge action because the action at bar does not seek only a general construction of the Agent Agreements. These plaintiffs, in their wrongful termination claim, seek a determination of money damages for contract violations. That determination will hinge on alleged subsequent oral modifications of the contracts signed with Paul Revere. The claims are thus pregnant with individualized issues.
The plaintiffs at bar acknowledge that the basic agreements permitted either party to terminate the contract with thirty days’ notice. They argue, however, that the contracts, as originally written, no longer governed the relationship between Paul Revere and its agents because the contracts had been modified by oral and written representations made to plaintiffs by company managers and by the conduct of the parties. It is plaintiffs’ reliance on those subsequent modifications that individualizes their remedy.
Plaintiffs argue that Paul Revere’s training manuals emphasized permanent, career-long employment as a means of attracting talented agents to the company and insuring production stability and that Paul Revere managers relied on those manuals in promising agents career-long employment. Plaintiffs further allege that training materials that invited them into a “partnership” arrangement with Paul Revere created an actual partnership relationship between Paul Revere and its agents, further supporting the agents’ expectation of full-time employment until they reached retirement age. Defendants reject the notion that the Agent Agreements have been thus transformed. The dispute centers, accordingly, on whether the Agent Agreements, if modified and if viewed in the context of Paul Revere’s espousal of a lifetime relationship with its agents, prohibited Paul Revere from terminating its agents with the 30 days’ notice permitted by the basic Agreements. That question involves a determination of whether written contracts were effectively modified by subsequent oral and written representations made to individual agents and/or by conduct by Paul Revere. The determination of damages will, unlike the Eldridge determination, require individualized assessments of the representations made to particular agents by company emissaries and the extent to which each agent reasonably relied on those representations.
3. Limited Issues
Unlike its federal counterpart, Massachusetts law does not allow certification of a “limited issues” class— that is, a class action that decides the common questions of law or fact for the class as a whole, but then allows further litigation of particularized issues by the individual class members. See Fletcher v. Cape Cod Gas Co., 394 Mass. 595 (1985). In Massachusetts, a class action must resolve all disputes raised by the complaint. Id.
At bar, although the plaintiffs’ reduced commission claim is primarily one seeking generalized equitable relief, the wrongful termination claim is predominantly one for individualized money damages. Where such individualized determinations are required in order to calculate damages for each party aggrieved, the equitable character of the litigation will not predominate and the class cannot properly be certified. See Allison v. Citgo Petroleum Corp., 151 F.3d 401, 415 (5th Cir. 1998).[7]
CONCLUSION
The instant claim for improper termination requires individualized determinations of the representations made to each plaintiff and the extent to which the plaintiff relied on those representations. Accordingly, despite the equitable character of the reduced commission claim at bar, the wrongful termination claim is fatal to certification of the agent class because Massachusetts law does not permit limited certification. Plaintiffs will not prevail on their request that a nationwide class be certified.
ORDER
For the foregoing reasons, plaintiffs’ motion for certification as a nationwide class is DENIED.

Hughes is an Ohio resident.

Wright is an Arizona resident.

Buffington is a Georgia resident.

Stephen F. Eldridge and other v. Provident Companies and others, Worcester Superior Court Civil Action No. 97-1099 (decided February 23, 2000).

No such peculiar determinations will need to be made in Eldridge and, hence, certification oí Eldridge is apropos.